IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| AMERICAN SAFETY INDEMNITY COMPANY, an insurance company incorporated in the state of Oklahoma, | ) ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 2:10cv48-MHT |
| v. | ) ) | (WO) |
| T.H. TAYLOR, INC., et al., | ) ) | |
| Defendants. | ) | |

OPINION

This federal lawsuit is one of several arising out of

a contract T.H. Taylor, Inc., Terry H. Taylor and T.H.

Taylor Homes ("the THT parties") entered into to build a

home for Michael Rosenberg and Heidi Christie.[1] With this

---

1. American Safety names "T.H. Taylor Homes" as a defendant and alleges that T.H. Taylor Homes is a trade name under which T.H. Taylor, Inc. does business. Am. Comp. ¶ 4 (Doc. No. 10). The THT parties aver that T.H. Taylor Homes is not a separate entity. Def.'s Resp. at 2 n.1 (Doc. No. 48). American Safety's counsel also informed American Safety that it has been unable to locate any response filed by T.H. Taylor Homes in the
(continued...)

federal lawsuit, American Safety Indemnity Company seeks a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, of its duty to defend and indemnify the THT parties for state-court claims (cross and third-party) and a later arbitration complaint brought against them by Rosenberg and Christie based on a dispute over the construction of Rosenberg and Christie's home. American Safety has named the THT parties, Rosenberg, and Christie as defendants to this federal proceeding, and the THT parties have responded with counterclaims against the insurance company for breach of its contractual duty to defend and for bad-faith failure to defend and investigate. American Safety has properly invoked this federal court's diversity-of-citizenship jurisdiction. 28 U.S.C. § 1332(a)(1).

---

1(...continued)
underlying state-court proceeding or arbitration action. Pl.'s Ex. 1 at 7 (Doc. No. 46-1). Because the court is unable to ascertain the legal status of T.H. Taylor Homes with certainty, it is included here as a separate defendant.

This matter is now before the court on American Safety's motion for summary judgment. For the reasons that follow, the motion will be granted to the extent that judgment will be entered in the insurance company's favor in three respects: its claim for a declaration of no duty to defend the THT parties; the THT parties' counterclaim for breach of contractual duty to defend; and the THT parties' counterclaim for bad-faith failure to defend and investigate. The summary-judgment motion will be denied as to American Safety's claim for a declaration of no duty to indemnify the THT parties. The parties will be required, however, to show cause as to why American Safety's no-duty-to-indemnify claim should not be dismissed without prejudice as premature.

## I.  SUMMARY-JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court

3

shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II.  BACKGROUND

In 2009, the THT parties became defendants in three state-court lawsuits related to several properties, including that of Rosenberg and Christie. Rosenberg and Christie were also named defendants in two of the lawsuits. All of the state lawsuits were subsequently consolidated. The state lawsuits included an array of claims, including ones for enforcement of materialman's liens, beach of contract, open account, account stated, work and labor done, promissory-note enforcement, and

4

balance due after a mortgage-foreclosure sale.  (The identities of the plaintiffs in the state lawsuits are not relevant to this federal proceeding.)

Rosenberg and Christie responded to the state lawsuits with a crossclaim against T.H. Taylor, Inc. and Terry H. Taylor and a third-party claim against T.H. Taylor Homes, charging that the THT parties misrepresented that their home was 95 % complete and that subcontractors had been paid in full for all money owed at the time, when in fact the home was only 70 % complete and the subcontractors had not been paid in full.[2]

_____

2.  Rosenberg and Christie also filed a crossclaim and a third-party claim alleging that the THT parties conspired with Regions Bank to deprive Rosenberg and Christie of property.  American Safety made an argument in its motion for summary judgment as to why an allegation of conspiracy is not covered by the THT parties' insurance policy.  See Pl.'s Br. at 20 (Doc. No. 46-2).  However, in their response to the motion, the THT parties do not include any arguments about the conspiracy claim, addressing only Rosenberg and Christie's original crossclaim and third-party claim based on fraud and their subsequent arbitration action.  The court, therefore, concludes that the THT parties have abandoned any claim that American Safety owes a duty to defend them against Rosenberg and Christie's underlying conspiracy claim.
(continued...)

Rosenberg and Christie's crossclaim and third-party claim were ordered to arbitration, and their claims are now restated in an arbitration complaint.

As stated, with this federal lawsuit, American Safety seeks a declaration that it has no duty to defend and indemnify the THT parties for the Rosenberg and Christie state-court crossclaim and third-party claim and arbitration proceeding.[3]   The THT parties have responded to this federal lawsuit with counterclaims against the

2(...continued)
See Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) (stating that "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); McIntyre v. Eckerd Corp., 251 Fed.Appx. 621, 626 (11th Cir. 2007) ("Eckerd argued for summary judgment on McIntyre's battery claim.   In McIntyre's response to Eckerd's motion, however, she offered no argument regarding her battery claim. Thus, the district court did not err in concluding that because McIntyre made no argument on this claim, she abandoned it.").

3. Because the THT parties had originally sought indemnification from American Safety as to all of the state lawsuits to which it was subject, the insurance company had included all of the named parties (including the state plaintiffs) as defendants in this federal suit. However, American Safety later dismissed all parties except the THT parties, Rosenberg, and Christie.

insurance company for breach of its contractual duty to
defend and for bad-faith failure to defend and
investigate.

The THT parties are insured under an American Safety
Commercial General Liability Insurance Policy that covers
"bodily injury" and "property damage" resulting from an
"occurrence."[4]  "'Bodily injury' means bodily injury,
sickness or disease sustained by a person, including
death resulting from any of these at any time."  Pl.'s
Br. at 10 (Doc. 46-2).  "Property damage" is defined as
either "[p]hysical injury to tangible property, including
all resulting loss of use of that property," or "[l]oss
of use of tangible property that is not physically

_____

4.    The applicable provision is, more fully, as
follows: "We will pay those sums that the insured becomes
legally obligated to pay as damages because of 'bodily
injury' or 'property damage' to which this insurance
applies.    We have the right and duty to defend the
insured against any 'suit' seeking those damages.
However, we will have no duty to defend the insured
against any 'suit' seeking damages for 'bodily injury' or
'property damage' to which this insurance does not apply.
We may, at our discretion, investigate any 'occurrence'
and settle any claim or 'suit' that may result."  Pl.'s
Br. at 7 (Doc. No. 46-2).

injured." <u>Id</u>.   An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general conditions." <u>Id</u>.


### III.  DISCUSSION

The court will begin with a discussion of American Safety's two claims: first, whether the insurance company has a duty to defend the THT parties in Rosenberg and Christie's underlying state-court crossclaim and third-party claim and in the resulting arbitration proceeding; and, second, whether the insurance company has a duty to indemnify the THT parties for both the state-court and arbitration proceedings.  Finally, the court will discuss the THT parties' counterclaims against American Safety for breach of its contractual to defend and bad-faith failure to defend and investigate.

### A.  American Safety's Two Claims

### 1. Duty to Defend

### a. Rosenberg and Christie's State-Court Crossclaim and Third-Party Claim

A court follows a two-pronged analysis to determine an insurance company's duty to defend its insured from an underlying lawsuit.  <u>Hartford Cas. Ins. Co. v. Merchants & Farmers Bank</u>, 928 So.2d 1006, 1011 (Ala. 2005). In the first instance, the court considers the language of the insurance policy at issue and limits itself to an examination of the four corners of the complaint, looking to see if the allegations made against the insured obligate the insurer to defend under the provisions of the policy.  <u>Id</u>.  When a complaint is ambiguous, "it should be 'liberally construed in favor of the insured.'"  <u>Pharmacists Mut. Ins. Co. v. Godbee Medical Distributors, Inc.</u>, 733 F.Supp.2d 1281, 1283 (M.D. Ala. 2010) (Thompson, J.) (quoting <u>Ladner & Co., Inc. v. Southern Guaranty Ins. Co.</u>, 347 So.2d 100, 102 (Ala. 1977)).  As a general rule, the insured ultimately

9

bears the burden of establishing that coverage exists under its insurance policy.  <u>Employers Mut. Cas. Co. v. Mallard</u>, 309 F.3d 1305, 1307 (11th Cir. 2002).  "If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured."  <u>Auto-Owners Ins. Co. v. Toole</u>, 947 F.Supp. 1557, 1561 (M.D. Ala. 1996) (Thompson, J.)  (quoting <u>Chandler v. Alabama Mun. Ins. Co.</u>, 585 So.2d 1365, 1367 (Ala. 1991)).

Moreover, it is the allegations in the complaint, "not the legal phraseology, that determine whether an insurer has a duty to defend its insured in the action." <u>Hartford</u>, 928 So.2d at 1012.  Indeed, if the allegations "are irreconcilable with a legal theory ... asserted in the complaint," the allegations, "not the mere assertion of the legal theory, determine an insurer's duty to defend."  <u>Id</u>. at 1012.  Thus, it is not enough for a cause of action simply to be 'named' against the insured;

10

rather there must also be allegations in the complaint to support the cause of action.  Id.; cf. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007) (noting that, to avoid dismissal, a claim must have "plausible grounds" to support it); Ashcroft v. Iqbal, 556 U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

The second prong of the court's analysis occurs "[w]here the allegations of the complaint show that no injury alleged is within the coverage of the policy ... or where the allegations are ambiguous."  Auto-Owners Ins., 947 F.Supp. at 1561.  In such a situation, the court is not limited to the four corners of the complaint, "'but may also look to facts which may be proved by admissible evidence.'"  Id. (quoting Chandler, 585 So.2d at 1367).

In their original crossclaim and third-party claim, Rosenberg and Christie charged the THT parties with fraud for "misrepresent[ing] material facts willfully, maliciously, innocent[ly] or by mistake." Rosenberg and Christie Ans. at 9 (Doc. No. 1-2). American Safety maintains that it has no duty to defend the THT parties because Rosenberg and Christie have not stated a claim for injuries arising out of an "occurrence," as it is defined in the THT parties' insurance policy.

The THT parties' policy covers losses that result from "occurrences," which are defined as "accidents." Under Alabama law, an accident is "[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could be reasonably anticipated," Hartford, 928 So.2d at 1011 (quoting Black's Law Dictionary 15 (7th ed. 1999)); thus, it is "something unforeseen, unexpected, or unusual." Id. (citation omitted).

12

In <u>Hartford</u>, Merchants & Farmers Bank was insured by Hartford Casualty Insurance Company under a policy with definitions of "bodily injury," "property damage" and "occurrence" substantially similar to those in the THT parties' policy here.  928 So.2d at 1008.  Merchants owed a debt by Bridges Warehouse Furniture.   When Merchants discovered that Barnett & Brown, Inc., another furniture retailer, had placed some of its inventory for sale in Bridges's store, Merchants investigated and found out that Barnett had not secured its interest in the inventory.  Merchants therefore concluded that Barnett's inventory was under consignment to Bridges, giving Merchants a superior security interest in the furniture, and in any proceeds resulting from its sale.  Merchants notified Barnett of its position, at which point Barnett sued Merchants.   Merchants sought defense and indemnification from Hartford in the suit, but Hartford "concluded that the allegations of the complaint did not meet the policy definition of an 'occurrence,' 'property

13

damage,' or 'bodily injury.'" Id.   As a result of
Hartford's   refusal   to   provide   a   defense   or
indemnification, Merchants filed a declaratory judgment
action against Hartford.

The Alabama Supreme Court found that, regardless of
whether   Barnett   had   alleged   that   Merchants   acted
"negligently, willfully and/or wantonly," the facts as
stated in Barnett's complaint indicated only purposeful
action on Merchant's part.   Id. at 1012.   The court found
that "the negligence averment ... is therefore framed by
the   factual   allegations   ...,   and   'negligence'   merely
dangles as a cause of action that is unrelated to any
facts."   Id.   The facts that could be proved by other
admissible evidence did not change this conclusion.   The
court   therefore   held   that   no   accident   had   occurred
because the Merchants "decided upon a deliberate course
of conduct and ... intentionally pursued that course of
conduct."   Id. at 1013.   Merchants had thus engaged in "a
series of purposeful and deliberate acts that do not and

cannot be described as an accident," such that it could not "show an unexpected, unintended, or unforeseen result from its course of action." Id. Consequently, the court held that there was "no accident and hence no occurrence that would trigger Hartford's duty to defend." Id.

This court believes that Hartford controls here. American Safety argues that, while Rosenberg and Christie may have charged the THT parties with not only willful and malicious fraud but also "innocent fraud," the allegations in their "cross claim and third-party complaint simply do not describe a situation where the fraud was perpetrated by a mistake or accident." Pl.'s Br. at 29 (Doc. No. 46-2). The THT parties respond that Rosenberg and Christie were merely pleading in the alternative and that any allegation of innocent misrepresentation makes a claim for an "accident" that should trigger American Safety's duty to defend. However, as the court in Hartford directed, in order to determine whether American Safety has a duty to defend

15

the THT parties, it is necessary to look beyond the "legal phraseology" used by Rosenberg and Christie and instead to evaluate the allegations used to support their cause of action.  928 So.2d at 1012.

While the THT parties argue that Rosenberg and Christie's crossclaim and third-party claim could be read to allege that the THT parties innocently misrepresented the rate of completion of the house and whether they had paid subcontractors for the work performed, the court fails to see how, from the underlying allegations asserted, this sort of misrepresentation could be "innocent" and thus an "accident."  "The word 'accident,' in accident policies, means an event which takes place without one's foresight or expectation.  A result, though unexpected, is not an accident; the means or cause must be accidental."  Black's Law Dictionary (9th Ed. 2009) (quoting 1A John Alan Appleman & Jean Appleman, Insurance Law and Practice § 360, at 455 (rev. vol. 1981)). According to the allegations made by Rosenberg and

Christie, the THT parties' actions cannot be termed
accidental.   Rosenberg and Christie say that the THT
parties represented that their home was nearly complete
when in fact it was only 70 % finished.   Rosenberg and
Christie also allege that, every time the THT parties
received an advance on the construction loan, they
"warranted 'that all subcontractors or other persons
furnishing labor, materials or equipment in the
construction of said residence have been paid in full for
monies paid to date,'"  Rosenberg and Christie Ans. at 9
(Doc. No. 1-2), but that Rosenberg and Christie later
learned that several of the subcontractors had not been
paid.  Rosenberg and Christie further allege that the THT
parties "knew such representations were false" when they
made them.  Id.

     There are no allegations set forth in Rosenberg and
Christie's crossclaim and third-party claim to support
the conclusion that the THT parties were mistaken in
their averments that all bills had been paid or that the

17

house was 95% complete.  Indeed, the allegations actually controvert any notion of innocent misrepresentation.  <u>See Hartford</u>, 928 So.2d at 1012 ("[T]he facts stated in the complaint in this case flatly contradict the allegation of negligence, which was simply dropped into the complaint."); <u>Thorn v. American States Ins. Co.</u>, 266 F.Supp.2d 1346, 1351 (M.D. Ala. 2002) (Thompson, J.) ("The fact that the words 'negligently, mistakenly, or innocently' were included does not convert these claims into claims for non-intentional fraud."); <u>Auto-Owners Ins.</u>, 947 F.Supp. at 1562 ("The 'willfully, wantonly, or negligently' language does not warrant a different outcome.").

Because the factual allegations put forward in the Rosenberg and Christie crossclaim and third-party claim fail to state an "occurrence" within the terms of the policy, the court must move to the second prong of its inquiry: "whether the facts which may be proved by admissible evidence state an 'occurrence.'"  <u>Hartford,</u>

928 So.2d at 1011.  See also Ladner & Co. v. Southern Guaranty Ins. Co., 347 So.2d 100, 103 (Ala. 1977) ("[W]hen the allegations of the complaint show that the injury alleged is not within the coverage of the policy, other facts which did exist but were not alleged, could be taken into consideration.").  The state-court filings show that constructions costs on Rosenberg and Christie's home were expected to total $ 762,197 and that the THT parties had obtained $ 731,459 through construction draws under the loan financed through Regions Bank; however, as of June 2009, the THT parties had outstanding subcontractor bills amounting to $ 69,083.81, and the cost to complete construction was estimated to be $ 191,500.  See Def.'s Ex. 1 at 8-9 (Doc. No. 48-1).  The THT parties have given no explanation in any of their filings for their statements that the house was 95 % complete, or their failure to pay the subcontractors.  Moreover, there is no indication that any forthcoming

19

evidence would show that the THT parties' actions were a mistake or an "accident."

In conclusion, the allegations in Rosenberg and Christie's crossclaim and third-party claim as well as the evidence in the underlying litigation support only one conclusion as to intent: that the THT parties "decided upon a deliberate course of conduct and, throughout the time frame in question, intentionally pursued that course of conduct," Hartford, 928 So.2d at 1013; their actions  do not show an "unexpected, unintended, or unforeseen result."  Id.  Consequently, there was no accident and thus "no occurrence that would trigger [American Safety]'s duty to defend."  Id.


   b.  Rosenberg and Christie's Arbitration Suit

As with Rosenberg and Christie's crossclaim and third-party claim, the court must undertake the same two-pronged analysis of their arbitration proceeding to determine whether American Safety has a duty to defend

**20**

the THT parties in that proceeding.  When they redrafted their claims for arbitration, Rosenberg and Christie did not formally name the claims as they had in their original crossclaim and third-party claim.  Nor do their factual allegations help in clarifying what claims are at issue; instead, they merely alleged that the THT parties "failed to pay suppliers for material furnished, although certifying to Plaintiffs all supplies had been paid," Arb. Comp. ¶ 11 (Doc. No. 48-1), and that they "failed to finish the house under contract ... in a timely, economic and expeditious manner as required by the contract."  Id. ¶ 15.

The THT parties argue that, by removing any characterization of their conduct as intentional in their arbitration complaint (either as a labeled claim or in the factual allegations), Rosenberg and Christie allege a claim that "can be read to assert unintentional misconduct which nevertheless caused them injury." Def.'s Resp. at 16 (Doc. No. 48).

However, because, as stated above, the insured bears the burden of showing coverage and because there is absolutely nothing in the arbitration complaint indicating unintentional conduct, the court must move to the second prong of its analysis and "look to facts which may be proved by admissible evidence." Auto-Owners Ins., 947 F.Supp. at 1561 (quoting Chandler, 585 So.2d at 1367). Moreover, even if the court were to view the arbitration complaint as ambiguous, the court would still have to turn to "admissible evidence" to try to resolve the ambiguity. Id. The admissible evidence for the arbitration complaint consists of essentially the same as that provided in the litigation of Rosenberg and Christie's crossclaim and third-party claim. As discussed above, the crossclaim and third-party claim evidence indicates that the THT parties' conduct was not innocent or mistaken. Therefore, there is no claim based on an "occurrence" that would require American Safety to

defend the THT parties in the underlying arbitration
action.


## 2.  Duty to Indemnify

American Safety also seeks a declaration that it is
under no duty indemnify the THT parties in the underlying
state-court and arbitration proceedings.   These
proceedings have not yet resulted in a ruling as to the
THT parties' liability.  As a result, a declaration is
not only inappropriate under the Declaratory Judgment Act
but also because a 'case' or 'controversy' is lacking.
Auto-Owners Ins., 947 F.Supp. at 1561 ("Here, Toole could
prevail in the underlying lawsuit.  With this result, the
issue of whether Auto-Owners must indemnify Toole would
be moot, and the court would never have to reach the
issue. 'The time and effort the court and the parties
would have expended in resolving the issue would be
wasted.  For these reasons, the court concludes that the
issue of indemnification is not sufficiently ripe to

present a "case" or "controversy" and that, if there were, the court would still, in the exercise of its discretion, decline to provide declaratory relief.'") (citation and footnote omitted).

Summary judgment will be denied on American Safety's request for a declaration that it has no duty to indemnify the THT parties.  However, because, as shown above, it appears that American Safety's indemnification claim is premature, the court will require that the parties show cause as to why this claim should not be dismissed without prejudice.


### B. The THT Parties' Two Counterclaims

The THT parties assert two counterclaims against American Safety: breach of the insurance company's contractual duty to defend and the insurance company's bad-faith failure to defend and investigate.

### 1. Duty to Defend

The THT parties' breach-of-contract counterclaim essentially mirrors American Safety's duty-to-defend claim. The THT parties claim that American Safety breached its insurance contract by failing to defend them in the underlying state-court and arbitration proceedings. For the reasons given above, American Safety had no duty to defend. American Safety's motion for summary judgment will therefore be granted on the THT parties' breach-of-contract counterclaim.

### 2. Bad-Faith Failure to Defend and Investigate

Finally, the court turns to whether American Safety is entitled to summary judgment on the THT parties' counterclaim for bad-faith failure to defend and investigate. Under Alabama law, the elements of a bad-faith-refusal-to-defend claim include (1) an insurance contract between the parties and a breach thereof by the defendant; (2) an intentional refusal to

25

defend the insured; (3) the absence of any reasonably legitimate or arguable reason for that refusal (that is, the absence of a debatable reason); and (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason.   <u>Mutual Service Cas. Ins. Co. v. Henderson</u>, 368 F.3d 1309, 1314 (11th Cir. 2004).   To succeed with a bad-faith-failure-to-defend claim, the THT parties must make more than a mere showing of non-defense, and must prove a bad-faith non-defense, one "without any reasonable ground for dispute.   Or, stated differently, [the THT parties] must show that the insurance company had no legal or factual defense to the insurance claim."   <u>State Farm Fire & Cas. Co. v. Slade</u>, 747 So.2d 293, 304 (Ala. 1999).

As the court indicated above, American Safety had an arguable reason for its refusal to defend, namely, the fact that there was no "occurrence" that would trigger coverage under the insurance policy.   Therefore, there

was no bad faith in American Safety's refusal to defend the THT parties.

In their response to American Safety's motion for summary judgment, the THT parties also argue that American Safety is liable for an "abnormal" bad-faith failure to investigate. Def.'s Resp. at 17. In Alabama, "in order to recover under a theory of an abnormal case of bad-faith failure to investigate an insurance claim, the insured must show (1) that the insurer failed to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review and (2) that the insurer breached the contract for insurance coverage with the insured when it refused to pay the insured's claim." Mutual Service, 368 F.3d at 1315 (emphasis added) (quoting Ex parte Simmons, 791 So.2d 371, 379 (Ala. 2000)).

Of course, here the issue is a refusal to defend, not a refusal to pay. Therefore, this court modifies the above two elements as follows:  In order to recover under

27

a theory of an abnormal case of bad-faith failure to investigate an insurance claim when that failure leads to a failure to defend, the insured must show (1) that the insurer failed to investigate the claim properly or to subject the results of the investigation to a cognitive evaluation and review and (2) that the insurer breached the contract for insurance coverage with the insured when it refused to defend.

To succeed on this claim, the insured must establish that "the insurer either intentionally or recklessly failed to properly investigate the claim." <u>Blackburn v. Fidelity and Deposit Co. of Maryland</u>, 667 So.2d 661, 668 (Ala. 1995) (quotation marks and citation omitted).

An insurance company "providing an arguable reason for denying an 'abnormal' bad faith claim does not defeat that claim," as it does in a "normal" bad-faith-failure-to-defend claim. <u>Mutual Service</u>, 368 F.3d at 1315. Thus, even if genuine issues of material fact exist as to whether the insured's coverage request and the subsequent

denial of coverage were valid, an insurance company can be liable for an abnormal bad-faith failure to investigate that request properly.  <u>Blackburn</u>, 667 So.2d at 668.

Here, the court has already found that American Safety did not breach the insurance contract by refusing to provide a defense to the claims against the THT parties.  Thus, the THT parties have not proved the second element of an "abnormal" bad-faith-failure-to-investigate claim.

In addition, the evidence shows that American Safety requested information from the THT parties regarding the facts underlying the various suits against them and received a letter from their counsel.  <u>See</u> Def.'s Ex. 1 at 5-10 (Doc. No. 48-1).  The insurance company then submitted that information to outside counsel for evaluation.  There is thus no evidence that American Safety "recklessly or intentionally failed to properly investigate" the THT parties' request for defense or to

"submit the results of [its] investigation to a cognitive review."  Ex parte Simmons, 791 So.2d at 379 .  The fact that the insurance company did not respond to the THT parties' notification regarding Rosenberg and Christie's newly stated claim in the arbitration complaint does not indicate a lack of cognitive review, as the THT parties contend; instead, it simply indicates that the insurance company assessed that information and determined that it did not need more.

All of the evidence therefore indicates that American Safety fulfilled its duty to investigate and evaluate properly the claims against the THT parties before denying coverage.  See Mutual Service, 368 F.3d at 1318-19 (holding that the insurance company did not recklessly fail to investigate the insured's claim in an instance where the insurance company "submitted the claim to outside counsel for further investigation and review" and considered the insured's version of the facts in a letter from their lawyer, and was "under no further obligation

to interview the [insureds] to again receive their version of the facts" before denying coverage). Consequently, the THT parties have not made out either of the elements of an "abnormal" bad-faith-refusal-to-investigate claim.

The THT parties have failed to provide sufficient evidence to support their counterclaim that American Safety is liable for either a "normal" bad-faith failure to defend or an "abnormal" bad-faith failure to investigate. Therefore, summary judgment will be entered in favor of American Safety on that counterclaim as well.

***

Accordingly, for the above reasons, American Safety's motion for summary judgment will be granted to the extent that judgment will be entered in its favor in three respects: (1) its claim for a declaration of no duty to defend the THT parties; (2) the THT parties' counterclaim

31

for breach of contractual duty to defend; and (3) the THT parties' counterclaim for bad-faith failure to defend and investigate.   A declaration will be entered finding that American Safety has no duty to defend the THT parties in the underlying state-court and arbitration proceedings brought against them by Rosenberg and Christie.    The summary-judgment motion will be denied as to American Safety's claim for a declaration of no duty to indemnify the THT parties.   The court will instead require that the parties show cause as to why American Safety's no-duty-to-indemnify claim should not be dismissed without prejudice as premature.   An appropriate judgment will be entered.

DONE, this the 29th day of March, 2011.


_____/s/ Myron H. Thompson_____
UNITED STATES DISTRICT JUDGE